DEANNA NIELSEN, NOW KNOWN AS DEANNA TUTTLE,
APPELLEE, V. WILFRED WALTER NIELSEN, APPELLANT.

348 N.W.2d 416

Filed April 20, 1984. No. 83-130.

Martin R. Gardner, and Michael J. Lehan of Kelley, Kelley & Lehan, for appellant.

John W. Wynkoop, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

PER CURIAM.

Wilfred Walter Nielsen murdered the grandparents of his children, the parents of his former wife, Deanna Tuttle, formerly Deanna Nielsen. Wilfred is serving two concurrent life sentences in the Nebraska Penal and Correctional Complex for those murders, which occurred in 1977.

On October 20, 1978, the district court entered a decree dissolving the marriage of Deanna and Wilfred. The decree of dissolution placed custody of the Nielsen children with Deanna, subject to Wilfred's right of reasonable visitation. The children are a daughter, born on May 1, 1977, and a son, born on April 23, 1978.

On June 2, 1982, Deanna filed an application to modify the 1978 decree regarding Wilfred's visitation. At the hearing on Deanna's application, the evidence established that the children know that Wilfred murdered their grandparents. Evidence also included reports describing the psychological effect of the children's visiting Wilfred at the penitentiary. Dr. Paul M. Fine, associate professor and

director of the Child and Family Psychiatry Services at the Creighton University School of Medicine, informed the court that the main psychological need for the Nielsen children is a secure home and positive self-image and that "[v]isits with [Wilfred] at the penitentiary . . . will become more confusing and conflictual as they become older and more able to conceptualize the social implications of his crime. . . . I can see no constructive purpose for mandatory visits by these children at the penitentiary." Dr. Fine's report did allow that, when the Nielsen children are older, the children might desire to visit Wilfred, but "regular visits at this time are not in the children's best interests." The court received in evidence a report of Dr. Gary B. Melton, a clinical psychologist in the department of psychology at the University of Nebraska-Lincoln, which contained: "Dr. Fine's prediction that visits to the Penitentiary will become the precipitants of conflict for the children as they grow older is plausible." After hearing Deanna's application the district court found that the Nielsen children's visiting Wilfred at the penitentiary was not in the best interests of the children.

As his assignment of error, Wilfred contends that he should be allowed visitation of his children at the penitentiary.

In a question about visitation, as in the case of child custody, a parent's rights are not absolute but must yield to the best interests of the child. *Gorsuch v. Gorsuch*, 148 Neb. 122, 26 N.W.2d 598 (1947); cf. *Prince v. Massachusetts*, 321 U.S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944). A child's best interests are a court's touchstone and primary consideration or concern in resolving a question about parental visitation. See, *Kaufmann v. Kaufmann*, 140 Neb. 299, 299 N.W. 617 (1941); *Caynor v. Caynor*, 213 Neb. 143, 327 N.W.2d 633 (1982); 27B C.J.S. *Divorce* § 317(2) (1959).

In determining reasonable visitation rights, the best interests and welfare of the child are

the primary consideration, considering age, health, welfare, educational and social needs, the need for a stable home environment free of unsettling influences, the fitness of the noncustodial parent for such visitation, and the relationship of the child to that parent.

*Heyne v. Kucirek*, 203 Neb. 59, 63, 277 N.W.2d 439, 441 (1979). See, also, *Casper v. Casper*, 198 Neb. 615, 254 N.W.2d 407 (1977); *Brisby v. Whitted*, 190 Neb. 309, 207 N.W.2d 696 (1973). Determination of a child's best interests is a finding of fact made by the court. See *Caynor v. Caynor, supra*. On appeal of domestic relations cases we review the record de novo in making our independent findings of fact, without reference to the conclusion reached by the trial court. *Hinz v. Hinz*, 215 Neb. 335, 338 N.W.2d 442 (1983).

This case bears a striking similarity to *Casper v. Casper, supra*, wherein we held that the mere fact of incarceration is not sufficient justification to deny a prisoner's right to visit his children, even though the right of visitation may be effectively exercised only at the institution where the noncustodial parent is incarcerated. See, also, *McCurdy v. McCurdy*, 173 Ind. App. 437, 363 N.E.2d 1298 (1977).

Wilfred calls to our attention cases in which courts have struck down as unconstitutional procedures adopted by authorities or jail policies barring a prisoner from visiting his children at the place of incarceration. See, *In re Smith*, 112 Cal. App. 3d 956, 169 Cal. Rptr. 564 (1980); *Valentine v. Englehardt*, 474 F. Supp. 294 (D.C.N.J. 1979). In this case there is no procedure used by authorities or jail policy questioned by Wilfred. The order modifying Wilfred's visitation is not based solely on the fact of Wilfred's incarceration. When the decree of dissolution was entered in 1978, one of the Nielsen children was approximately 1½ years old and the other's age was just under 6 months. At the time the district court modified Wilfred's right of visitation, the children were nearly 6 years and 5 years of age. In view of

the ages of the children when the decree of dissolution was entered, the children could not have understood the reason for Wilfred's imprisonment. The evidence shows that with the passage of time the Nielsen children became aware of the circumstances surrounding Wilfred's incarceration. According to professional opinion in evidence, there will be an adverse psychological impact on the Nielsen children as a result of visitation at the penitentiary. Visitation at the penitentiary will disturb and unsettle the children during their current, formative years, when security and stability are essential to the normality of the Nielsen children.

We find that the best interests of the Nielsen children presently require that there be no visitation with Wilfred at the penitentiary.

No attorney fee is taxed as a part of the costs on appeal, and each party shall pay his or her own attorney fee.

The judgment of the district court is affirmed.

AFFIRMED.

GRANT, J., not participating.